T. S. CAMP v. THE STATE.

No. 2198. Decided February 13, 1901.

**Occupation Tax—Lightning Rod Dealer—Interstate Commerce.**

See opinion for facts stated, which, the court hold, shows that defendant, who was pursuing the occupation of a dealer in lightning rods, was not absolved from the payment of the State occupation tax under the interstate commerce provision of the Constitution of the United States.

APPEAL from the County Court of Erath. Tried below before Hon. L. N. FRANK, County Judge.

Appeal from a conviction for pursuing the occupation of a dealer in lightning rods without first having paid the occupation tax and procured a license therefor; penalty, a fine of $54.

The opinion states the case.

*W. J. Oxford* and *Martin & George,* for appellant.—Motion for rehearing filed and briefed by Crane & Greer.

*D. E. Simmons,* Acting Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted for pursuing the occupation of a dealer in lightning rods without having paid the State and county tax due thereon and procuring a license to pursue such business in Erath County, and his punishment assessed at a fine of $54, the amount of the State and county taxes for one year. There is no bill of exceptions in the record, and appellant's only contention is that under the facts proven he was pursuing an occupation protected as interstate commerce, and so not liable to a tax. In support if his contention he cites us to the cases of Talbutt v. State, 39 Texas Criminal Reports, 64, and French v. State, ante, p. 222. In both of said cases we endeavored to apply the rule laid down by the Supreme Court of the United States as to what constitutes interstate commerce to the facts as presented. In the latter case we laid down the rule as extracted from Leisy v. Hardin, 135 United States, 100, 10 Supreme Court, 681, 34 Lawyers' Edition, 128: "That it is only after the importation is completed, and the property imported has mingled with and becomes a part of the general property of the citizens of the State, that its regulations can act upon it." In that case the party was dealing in organs, and we held that the organ was protected, not only until its arrival within the State into the custody of the agent of the foreign company, but that interstate commerce protected it while the agent of the foreign company carries it around with him, and until he finds a purchaser, and then sells and delivers it to such purchaser. This is going as far as we are willing to extend the rule in its application to interstate commerce, and we believe is going to the extreme limit as laid down by the Supreme Court of the United States. This case, how-

ever, it occurs to us, goes much further than that. Here, while appellant took orders from the citizens of this State to erect lightning rods upon their buildings, and so took them from a number of citizens of Erath County, yet all the goods—i. e., the lightning rods and their equipments—appear to have been shipped direct to him in consignments; and he did the work of erection himself on the houses, or had it done at his expense, furnishing the wagons, etc. No only so; he is shown in a number of instances to have used material for erecting the lightning rods on houses within so short a time after taking the orders as that opportunity was not afforded to have the material sent from St. Louis before the work was begun and finished. In one instance he began the work in three days after making the contract, when the proof showed that it would take about ten days to get the consignment by freight (as he shipped by that mode) from St. Louis. In another instance he began the work in an hour and a half after making the contract with the party to erect a lightning rod for him. In another instance he appears to have made a trade with a party, taking his old lightning rod as a part of the consideration when the terms of his contract with Cole Bros., of St. Louis, gave him no such authority. Moreover, as a part of his contract with parties, he erected said lightning rods, which was done by an expert furnished and paid by him; and it is shown in the contract between him and Cole Bros. that he was authorized to make sale, they giving him a margin predicated on the catalogue of list prices; that he was not only to get a salary, but was interested in the business, and shared the profits with Cole Bros. As stated before, all the goods were shipped to him, and he paid all the freights and expenses of the business in this State. While the notes were taken in the name of Cole Bros. in cases where he did not make a cash sale, he had an interest in these notes, i. e., as we understand the arrangement between them, he was first to pay Cole Bros. net one-fourth the price of the goods as per their printed list, and all the balance of the proceeds, whether money or notes, was to go to the said agent (appellant) as his commission for taking orders, delivering and erecting lightning rods, etc., and for all other expenses connected with the business of said agency; and, in addition thereto, he was authorized to receive a salary, the amount of which is not stated. The contract further limits the liability of Cole Bros. only to the acts of the agent in furnishing lightning rods, fixtures, and ornaments on orders taken by him. It is further provided that as to the notes they shall be sent by the agent to Cole Bros., but in case of loss or damage Cole Bros. shall not become liable to said agent for his interest in the same. It is provided further— evidently in order to secure Cole Bros. for goods furnished to appellant—that they should have at all times in their possession notes in double the amount which may be due from such agent. As we construe this agreement or contract, it was evidently intended that appellant should carry on the business of dealing in lightning rods and erecting

them on the houses of all persons with whom he could make contracts. He was to do the work of carrying the lightning rods from place to place and set them up at his own expense, and was to share in the profits arising, only accounting to the foreign concern for one-fourth of their list price for such goods; and all the balance over this was to go to appellant. If this arrangement did not constitute appellant an independent dealer in the lightning rod business, then it certainly constituted him a partner with the foreign house, he at the time residing and doing a lightning-rod business in this State. It looks to us very much as if the arrangement was concocted and entered into for the purpose of evading the occupation tax, which applies indiscriminately to all persons engaged in dealing in lightning rods within this State. We do not believe appellant was engaged in interstate commerce, or that the rules of law applicable thereto will protect him against the payment of the tax. The judgment is accordingly affirmed.

*Affirmed.*

[Note.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]